UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE J. BERRY,

        Plaintiff,

v.                                  Case No. 1:13-cv-868
                                    Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on July 30, 1962 (AR 147).[1] He alleged a disability onset date of April 12, 2000 (AR 147). Plaintiff completed the 12th grade, and had previous employment as a steel fabricator for an industrial heating and cooling business (AR 153). He last worked in April 2000 (AR 153). Plaintiff identified his disabling conditions as chronic right lateral epicondylitis (AR 151).[2] On October 21, 2011, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 19-27). This decision, which was later approved by the

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] Epicondylitis is defined as "inflammation of the epicondyle or of the tissues adjoining the epicondyle of the humerus," a condition also known as "tennis elbow." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at p. 564.

Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

2

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of April 12, 2000 and met the

3

insured status requirements of the Social Security Act through March 31, 2006 (AR 21). At step two, the ALJ found that plaintiff suffered from severe impairments of: "lateral epicondylitis, status post release (right) with arthrotomy/capsule release elbow JT (2000); mild ulnar nerve irritations; [and] C6/7 laminectomy (1995)" (AR 21). At step three, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 22).

The ALJ decided at the fourth step that through March 31, 2006 (the date last insured), plaintiff had the residual functional capacity (RFC):

> . . . to perform light work as defined in 20 CFR 404.1567(b) except lift and carry five pounds occasionally on the right (dominant upper extremity); never push or pull with the right upper extremity; never climb ladders, ropes or scaffolds; occasional climb [sic] ramps and stairs; never crawl; occasional reaching with right upper extremity; occasional reach [sic]overhead with right upper extremity; occasional handling / gross manipulation with right upper extremity; occasional fingering / fine manipulation with right upper extremity; moderate exposure to extreme cold / heat; avoid all exposure to excessive vibration; avoid all use of hazardous machinery; and all exposure to unprotected heights; [n]o repetitive power use, gripping, or grasping with the right hand; no repetitive use of the right arm; no repetitive reaching / grasping with right arm; and no lifting over five pounds with right arm.

(AR 22). The ALJ also found that through the date last insured, plaintiff was unable to perform his past relevant work (AR 26).

At the fifth step, the ALJ determined that through the date last insured, plaintiff could perform a significant number of jobs in the national economy (AR 26-27). Specifically, plaintiff could perform the following jobs in the region[3]: cashier (4,000 reduced range of light, unskilled jobs); telemarketing (500 reduced range of sedentary, unskilled jobs); surveillance system monitor (1,000 reduced range of sedentary, unskilled jobs); small parts inspector (1,000 reduced range of

---

[3] While the ALJ's decision did not name the region at issue, the vocational expert defined the region as the State of Michigan (AR 62).

sedentary, unskilled jobs); and clerk (2,000 reduced range of sedentary, unskilled jobs) (AR 26-27). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from April 12, 2000 (his alleged onset date) through March 31, 2006 (his date last insured) (AR 27).

### III. ANALYSIS

Plaintiff raised two issues on appeal:

**A. The ALJ failed to properly evaluate and weigh the medical opinion evidence of record, as required under the treating physician rule.**

Plaintiff contends that the ALJ did not properly evaluate opinions given by his treating physician, Kim Eastman, M.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective

5

medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, Dr. Eastman identified the following limitations in a "Medical Provider's Assessment of Patient's Ability to do Physical Work-Related Activities" dated April 13, 2010 (AR 309-10). When asked how plaintiff's pain would be "severe enough to interfere with attention and concentration if he were placed in a competitive work situation," the doctor checked "frequently" (AR 309). When asked if plaintiff would need to take unscheduled breaks during an 8-hour day, the doctor checked "yes" (AR 309). When asked how often this would happen, the doctor did not supply an answer, but noted that plaintiff could not use his right arm repetitively (AR 309). When asked how long plaintiff would need to rest before returning to work, the doctor responded with a question, "what kind of work?" (AR 309). When asked if plaintiff's condition was likely to produce "good days" and "bad days," the doctor checked "yes" (AR 309). When asked to estimate, on average, how often plaintiff was likely to be absent from work as a result of the impairments, pain

or treatment, the doctor checked "more than four days per month" (AR 309). When asked to provide remarks or additional comments, the doctor stated that plaintiff could not do repetitive reaching or grasping with the right arm (AR 310). Finally, the doctor acknowledged that these limitations existed in the severity noted since March 2006 (AR 310).

       The ALJ reviewed plaintiff's medical history through his date last insured of March 31, 2006. The ALJ found that plaintiff had significant pain in his right elbow in November 1999 and eventually sought treatment from an orthopedic surgeon, Dr. Eastman (AR 23). The doctor treated plaintiff with conservative measures, restricting his lifting to five pounds maximum, no repetitive reaching or grasping with the right hand, which in the doctor's opinion precluded the performance of plaintiff's regular job which involved working with steel (AR 23, 282). X-rays of the right elbow from May 25, 2000 were normal, with a diagnosis on June 14, 2000 of tennis elbow on the right (AR 24, 281-83). The doctor noted that plaintiff had "a real heavy job, working with steel" and thought that plaintiff could try clerical duties with "light" files, but plaintiff later had problems reeling in fish, at which time surgery became an option (AR 24, 286-88). Plaintiff underwent a right epicondylar release and osteotomy of the bone with repair of the tendons on December 7, 2000 (AR 24, 289). The doctor's notes reflected that plaintiff's elbow was "coming along" after surgery, but plaintiff reported that while fishing in Florida, he could not reel the fish in (AR 24, 292-99).

       Plaintiff's April 2001 nerve study was normal, and by August 2001, the doctor noted that plaintiff was unable to use his right arm to perform repetitive reaching, grasping or power use, and stated, "I would think and hope that he could do some lighter tasks with the right arm such as working with a computer" (AR 24, 294-96). In October 2001, plaintiff stated that he was unable to

7

use a computer to sell real estate but was able to do light things including hunting with a crossbow (AR 24, 297). The doctor noted, "[h]e wants a cross bow permit and a statement was written for that" (AR 297). In November 2001, plaintiff returned to work in a job which required using pliers, snipping wires, and using a screwdriver, but he indicated that it was too painful (AR 24, 298). In December 2001, plaintiff told the doctor that he underwent functional capacity testing for various work activities, that the tests lasted three to four minutes, but there was no way he could do the work for 2 1/2 hours per day (AR 24, 299). The doctor stated that plaintiff should use his right arm for light assistive use, with no lifting over five pounds or repetitive reaching or power grasping (AR 299).

Plaintiff's complaints, conservative treatment and restrictions remained the same though December 2002 (AR 24). At that time, he reported that he was considering settling his workman's compensation claim and then would seek employment rather than working with the workman's compensation system (AR 24, 305).

The ALJ addressed plaintiff's treatment and condition since 2002 as follows:

> There is no pertinent medical evidence until June 2005. The office visit was due to claimant needing a physical form filled out for camp. He was feeling well (Ex 1F/9). The October 2005 office visit shows claimant is diagnosed with hand pain and paresthesias with history of carpal tunnel syndrome surgery although he had good grip strength bilaterally (Ex 1F/8).
>
> Indeed, claimant has surgical history of reconstructed maxilla segment in 1982, cervical laminectomy at C6-7 in 1995, and arthrotomy/capsule release elbow JT in 2000, and carpal tunnel surgery (about 1995) (Ex 2F/59/48, 1F/8). However, in May 2006 these procedures did not stop claimant from requesting a physical exam for camp. "He is getting his captain's license for being a fishing guide." He said he felt well. His "as needed" medications that he took for his back pain were not being taken very frequently. His gait was normal. He did not mention a problem associated with elbow or hand. It appears his worst problem at the time was hypertension and hyperlipidemia with some noncompliance issues (Ex 1F). In December 2006, claimant complained of epicondylitis and stated, "It worsens from

>  time to time, flares up from time to time." Upon physical examination, he has good range of motion in both elbows (Ex 1F).
>
>  Through March 31,2006, the evidence is not consistent with a debilitating, intractable impairment that would preclude all work activity. Claimant's own description of discomfort is not the constant pain as he described during the hearing. He stays busy by going fishing and he even became a fishing guide. Yet, in January 2010 after not seeing claimant for several years, Dr. Eastman states that as predicted, claimant would be on permanent restrictions and, in fact, he has not gotten better. Notably, the office note specifically states he went for that evaluation due to his Social Security issues.
>
>  Claimant said he cannot do light things such as trying to use the mouse on a computer, although he testified that he uses Face book [sic]. He states the weather changes cause pain, although he applied for fishing guide license and goes to camp. He states he cannot do any repetitive reaching or grasping or power use. However, he is able to go walleye fishing but he avoids (bigger) salmon fishing. Dr. Eastman noted there are no arthritic changes with respect to his right epicondylitis. Claimant is healthy appearing. Pinwheel is normal. Reflexes are normal. Sensation is intact. Nevertheless, Dr. Eastman states the restrictions from 2000 continue, although there are no new diagnostic tests had been performed (Ex 3F/28).

(AR 24-25).

After reviewing the medical record, the ALJ evaluated Dr. Eastman's April 13, 2010 opinion (expressed in a Medical Provider's Assessment of Patient's Ability to Do Physical Work-Related Activities) (AR 309-10) as follows:

>  In April 2010, without referencing impairments or objective evidence, Dr. Eastman indicates that claimant's pain is of such severity that it would frequently interfere with his attention and concentration and he would need additional breaks. Claimant would miss work more than four days per month. However, it appears that Dr. Eastman had completed the form but was unaware of the kind of work the assessment/work activities the form was referring to (Ex 5F/l). Therefore, I give the remaining opinions in Exhibit 5F [AR 309-10] very little weight. The undersigned finds that such opinion is not well-supported by the objective and other substantial evidence of record.

9

(AR 25). The ALJ's finding on this record that Dr. Eastman's April 13, 2010 opinion was not supported by objective evidence, is good reason for assigning it little weight and, accordingly, plaintiff's claim of error should be denied.

> **B. The ALJ failed to fully develop the record and failed to resolve inconsistencies between the Dictionary of Occupational Titles and the Vocational Witness Testimony, as required by SSR 00-4p.**

Next, plaintiff contends that the vocational expert (VE) provided information which was inconsistent with the *Dictionary of Occupational Titles* ("*DOT*") and that the ALJ failed to develop the record to resolve the inconsistencies. Plaintiff cites SSR 00-4p ("Use of vocational expert and vocational specialist evidence, and other reliable occupational information in disability decisions") for the proposition that "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." Plaintiff's Brief at p. 9 citing SSR 00-4p.[4]

The Sixth Circuit has rejected the argument that the Commissioner is bound by the *DOT*'s characterization of occupations, holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's definitions." *Wright v. Massanari*, 321

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

F.3d 611, 616 (6th Cir. 2003), citing *Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995). Under SSR 00-4p, the ALJ has a duty to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence." The Sixth Circuit has construed this SSR to mean "that the Social Security Administration imposes an affirmative duty on ALJs to ask VEs if the evidence that they have provided 'conflicts with the information provided in the DOT.'" *Lindsley v. Commissioner of Social Security*, 560 F.3d 601, 606 (6th Cir. 2009). Here, the ALJ did not ask the VE if the evidence provided conflicted with the information provided in the *DOT*. However, in this instance, the Court concludes that the ALJ was absolved of this affirmative duty because by including a *DOT* code for each job identified in her response to the hypothetical questions (AR 64-67), the VE demonstrated that her opinions were consistent with the *DOT*. While the ALJ has a duty to develop the record, the court does not view SSR 00-4p as requiring the ALJ to affirmatively interrogate the VE in order to establish that no potential conflicts exist between the VE's testimony and the *DOT* when the VE's testimony includes citations to the *DOT*. Given the VE's citation to the *DOT*, there was no apparent discrepancy between that testimony and the *DOT*. Plaintiff's counsel did not raise the issue at the administrative hearing, and there was no reason for the ALJ to believe the VE's testimony was inconsistent with the DOT. Accordingly, plaintiff's claim should be denied.

**IV.     Recommendation**

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated:  September 3, 2014                                    /s/ Hugh W. Brenneman, Jr.
                                                             HUGH W. BRENNEMAN, JR.
                                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).